Andrew A. Weissmann (admitted *pro hac vice*)
Andrew J. Lichtman
JENNER & BLOCK LLP
919 Third Avenue
New York, New York 10022
(212) 891-1600 phone
(212) 891-1699 fax
aweissmann@jenner.com
alichtman@jenner.com

Daniel J. Weiss (admitted *pro hac vice*)
Keri L. Holleb Hotaling (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350 phone
(312) 527-0484 fax
dweiss@jenner.com
khotaling@jenner.com

*Counsel for Defendant*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN DIVISION**

| | |
|---|---|
| SUBARU OF AMERICA, INC. and GREAT AMERICAN INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>CBRE, INC.,<br><br>Defendant. | Case No. 1:20-cv-08603-NLH-AMD<br><br>Hon. Noel L. Hillman |

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES**
**AND COUNTERCLAIMS IN RESPONSE TO PLAINTIFFS' AMENDED COMPLAINT**

Defendant CBRE, INC. ("CBRE"), by its undersigned counsel, hereby answers the Amended Complaint of Plaintiffs SUBARU OF AMERICA, INC. ("Subaru") and GREAT AMERICAN INSURANCE COMPANY ("Great American") (collectively, "Plaintiffs"), asserts its affirmative defenses thereto, and counterclaims[1] as follows.

For ease of reference, CBRE has included in this Answer the captions and headings used in the Amended Complaint, but does not thereby admit the truth of any allegations in the captions and headings or any inference that could be drawn from those captions and headings. CBRE denies that Plaintiffs are entitled to any relief from CBRE and, unless expressly admitted or qualified below, CBRE denies each and every allegation in the Amended Complaint.

## PARTIES

1. Subaru is a New Jersey corporation incorporated under the laws of the State of New Jersey and maintains its principal place of business in Camden, New Jersey.

**ANSWER:** CBRE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1.

2. Great American is an Ohio corporation incorporated under the laws of the State of Ohio and maintains its principal place of business in Cincinnati, Ohio. Great American is in the business of issuing insurance contracts.

**ANSWER:** CBRE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2.

3. CBRE is a corporation incorporated under the laws of the State of Delaware and maintains its principal place of business in Los Angeles, California.

**ANSWER:** CBRE admits the allegations of Paragraph 3 with respect to CBRE, Inc.

---

[1] CBRE's counterclaims have not been amended and are re-stated solely for the Court's convenience.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1332 as the controversy arises between citizens of different states and the amount in controversy exceeds $75,000.

**ANSWER:** CBRE admits that this Court has subject matter jurisdiction over this action.

5. Venue is proper under 28 U.S.C. § 1391 because all or a substantial part of the events or omissions on which the claim herein is based occurred in the District of New Jersey.

**ANSWER:** CBRE admits that venue is appropriate in this judicial district.

## FACTS

6. This suit is brought in connection with facilities management services performed by CBRE and its subcontractor, Allied Materials, Inc. ("Allied Materials"), at several facilities used by Subaru in New Jersey.

**ANSWER:** CBRE states that the allegations of Paragraph 6 purport to characterize the nature of this action and that no answer is required for such characterizations. To the extent an answer is deemed required, CBRE denies the allegations of Paragraph 6.

7. On or about May 3, 1996, Subaru entered into a Facilities Management Agreement ("the Agreement") with Trammell Crow NE, Inc., and agreed to pay for facilities management services performed at several Subaru facilities in New Jersey. CBRE acquired Trammell Crow NE, Inc. in 2006. A copy of the Agreement is attached as **Exhibit 1**.

**ANSWER:** CBRE admits that Subaru entered into the Facility Management Agreement ("the Agreement") with Trammell Crow NE, Inc. ("Trammell Crow") on or about May 3, 1996. CBRE further admits that it acquired Trammell Crow in 2006. CBRE states that the remaining allegations of Paragraph 7 seek to characterize the terms of the Agreement, which speak for themselves, and therefore no answer is required as to those allegations. To the extent any further answer is deemed required, CBRE denies any remaining allegations of Paragraph 7.

8. The Agreement specified that unless earlier terminated, it would continue until December 31, 1998 and renew automatically on a year to year basis. *See* Ex. 1, at 1.

**ANSWER:** CBRE admits that Paragraph 2(b) of the Agreement states that it would continue until December 31, 1998 and renew automatically on a year to year basis.

9. On several occasions between 1996 and 2019, Subaru, Trammel Crow and CBRE agreed to modifications of the Agreement, including extensions of the term of the Agreement and increases in facilities management fees.

**ANSWER:** CBRE admits the allegations of Paragraph 9 as to the period 1996 through 2018; CBRE otherwise denies the allegations of Paragraph 9.

10. From the inception of the Agreement through the end of 2018, Subaru paid Trammel Crow and CBRE approximately $8,000,000.

**ANSWER:** CBRE states that its reasonably accessible records show that, between 2008 and 2018, Subaru paid CBRE approximately $4.7 million in relation to the facilities management agreement, however, most of that amount was to reimburse CBRE for direct labor costs. Further answering, CBRE states that its contractual management fee was less than $100,000 for each year of the contract, and was less than $55,000 per year from 2011 through 2018. CBRE states that its reasonably accessible business records do not cover the period before 2008 and CBRE therefore presently lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10 pertaining to that period.

11. As described in the Agreement, CBRE was to provide daily maintenance and repairs for Subaru's facilities. *See* Ex. 1, at 2. Among other things, CBRE agreed to manage the provision of janitorial services and supplies to Subaru's facilities. *Id*. at 3.

**ANSWER:** CBRE admits that the Agreement describes certain services to be provided by CBRE, which services are described in the contract. CBRE denies any remaining allegations of Paragraph 11.

12. The Agreement provided that CBRE would review and approve all invoices relating to the operation of Subaru's facilities. *Id*. at 6, 19.

**ANSWER:** CBRE admits that the Agreement provides, in part, that CBRE would review and approve certain invoices, but CBRE further states that the course of dealing between CBRE and Subaru also involved Subaru personnel reviewing and approving invoices from Allied Materials. Further answering, CBRE states that Subaru personnel knew or should have known of any alleged inaccuracy in the Allied Materials invoices. CBRE denies any remaining allegations of Paragraph 12.

13. Under the Agreement, all direct and third party expenses incurred in the performance of the facilities management services were to be paid by Subaru directly. *Id*. at 6, 21.

**ANSWER:** CBRE admits that Paragraph 5(c) of the Agreement states that "[t]o the greatest extent practicable all direct third party expenses incurred in performance of the Services shall be paid by [Subaru] directly[,]" and Exhibit C to the Agreement enumerates various "direct costs for property management [that] will be paid by [Subaru]." CBRE denies any remaining allegations of Paragraph 13.

14. Beginning in or about January 2003 and continuing until February 2018, CBRE, through its facilities managers, engaged in a scheme to issue false invoices from its subcontractor, Allied Materials, which were submitted to Subaru for payment.

**ANSWER:** CBRE denies the allegations of Paragraph 14.

15. Allied Materials was a janitorial supplies company located in Berlin, New Jersey.

**ANSWER:** CBRE admits the allegations of Paragraph 15.

16. CBRE hired Allied Materials to provide janitorial and facilities products to Subaru's facilities.

**ANSWER:** CBRE denies the allegations of Paragraph 16.

17. Allied Materials billed Subaru for janitorial and facilities supplies such as light bulbs, which Allied Materials never delivered to Subaru's facilities.

**ANSWER:** CBRE states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17.

18. Two of CBRE's facilities managers were aware of and participated in the false invoice scheme with Allied Materials in return for cash and other consideration.

**ANSWER:** CBRE denies the allegations of Paragraph 18.

19. Bill Norton ("Norton"), CBRE's facilities manager, was aware of and participated in the false invoice scheme in exchange for cash and other consideration from the owner of Allied Materials, Mitchell Bleicher ("Bleicher").

**ANSWER:** CBRE denies the allegations of Paragraph 19.

20. Steven Hitzel ("Hitzel"), the facilities manager for CBRE who replaced Norton in 2011, participated in the invoice scheme by signing the false invoices. In exchange, Hitzel received expensive dinners, lunches and wine, as well as tickets to professional sporting events, from Bleicher.

**ANSWER:** CBRE denies the allegations of Paragraph 20.

21. The scheme involved Allied Materials' weekly invoicing of janitorial products that were not delivered to Subaru's facilities.

**ANSWER:** CBRE states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21 regarding an alleged scheme. CBRE denies any remaining allegations of Paragraph 21.

22. As a result of the false invoice scheme, Subaru lost approximately $9,700,000.

**ANSWER:** CBRE states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22.

23. Great American issued an insurance policy to Subaru.

**ANSWER:** CBRE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23.

24. In November 2018, Subaru provided Great American with a proof of loss relating to its claim.

**ANSWER:** CBRE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24.

25. Thereafter, Great American paid Subaru $4,750,000 for the claim.

**ANSWER:** CBRE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25.

**COUNT I**
**(Breach of Contract)**

26. Plaintiffs incorporate by reference the foregoing allegations.

**ANSWER:** CBRE realleges and incorporates by reference its answers to the foregoing allegations as if fully set out here.

27. The Agreement between Subaru and CBRE is a valid and enforceable contract.

**ANSWER:** CBRE states that the allegations of paragraph 27 constitute a legal conclusion, that all legal conclusions are for the Court to make, and that no answer is therefore required. To the extent an answer is deemed required, CBRE denies the allegations of paragraph 27.

28. Subaru performed all of its obligations under the Agreement with CBRE.

**ANSWER:** CBRE denies the allegations of Paragraph 28.

29. CBRE breached the Agreement as set forth in the foregoing allegations.

**ANSWER:** CBRE denies the allegations of Paragraph 29.

30. Plaintiffs have been damaged as a result of the failure by CBRE to provide facilities management services according to the terms of the Agreement in an amount of not less than $9,700,000.

**ANSWER:** CBRE denies the allegations of Paragraph 30.

**COUNT II**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

31. Plaintiffs incorporate by reference the foregoing allegations.

**ANSWER:** CBRE realleges and incorporates by reference its answers to the foregoing allegations as if fully set out here.

32. A covenant of good faith and fair dealing is implied in every contract under New Jersey law.

**ANSWER:** CBRE states that the allegations of paragraph 32 constitute a legal conclusion, that all legal conclusions are for the Court to make, and that no answer is therefore required. To the extent an answer is deemed required, CBRE admits the allegations of paragraph 32.

33. Upon information and belief, CBRE, through its facilities managers, acted in bad faith by participating in the false invoice scheme.

**ANSWER:** CBRE denies the allegations of Paragraph 33.

34. CBRE's breach of the covenant of good faith and fair dealing has proximately and directly caused damages to Plaintiffs in an amount of not less than $9,700,000.

**ANSWER:** CBRE denies the allegations of Paragraph 34.

**COUNT III**
**(Fraud)**

35. Plaintiffs incorporate by reference the foregoing allegations.

**ANSWER:** CBRE realleges and incorporates by reference its answers to the foregoing allegations as if fully set out here.

36. CBRE received false invoices from Allied Materials.

**ANSWER:** CBRE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 36.

37. CBRE, through Norton and Hitzel, knew that the invoices it received from Allied Materials were false.

**ANSWER:** CBRE denies the allegations of Paragraph 37.

38. CBRE signed the false invoices indicating they were to be paid.

**ANSWER:** CBRE lacks knowledge of the "false invoices" referenced in Paragraph 38 and therefore CBRE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of that paragraph. Further answering, CBRE states that Subaru personnel who

knew or should have known about inaccuracies in any invoices reviewed and approved the invoices, submitted them to CBRE and Subaru, and did not advise CBRE of any inaccuracies.

39. CBRE submitted the false invoices to Subaru with the intent that Subaru would pay the false invoices.

**ANSWER:** CBRE denies the allegations of Paragraph 39, including because Subaru knew or should of known of any alleged inaccuracies in the invoices through its own employees.

40. Subaru paid the false invoices.

**ANSWER:** CBRE lacks knowledge as to any allegedly false invoices Subaru paid and therefore CBRE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 40.

41. As a direct result of CBRE's fraudulent conduct, Plaintiffs have been damaged in an amount not less than $9,700,000.

**ANSWER:** CBRE denies the allegations of Paragraph 41.

42. Plaintiffs are entitled to punitive damages for the willful, reckless, wanton and fraudulent conduct of CBRE.

**ANSWER:** CBRE denies the allegations of Paragraph 42.

**COUNT IV**
**(Negligent Misrepresentation)**

43. Plaintiffs incorporate by reference the foregoing allegations.

**ANSWER:** CBRE realleges and incorporates by reference its answers to the foregoing allegations as if fully set out here.

44. As an alternative to Count III, CBRE is liable for negligent misrepresentation.

**ANSWER:** CBRE states that paragraph 44 contains Plaintiffs' own characterization of their purported claims and therefore no answer is required. To the extent an answer is deemed required, CBRE denies the allegations of paragraph 44.

45. CBRE received false invoices from Allied Materials.

**ANSWER:** CBRE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 45.

46. CBRE failed to disclose and/or allowed the false invoices to be submitted to Subaru.

**ANSWER:** CBRE lacks knowledge of the "false invoices" referenced in Paragraph 46 and therefore CBRE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of that paragraph. Further answering, CBRE states that Subaru personnel who knew or should have known about inaccuracies in any invoices reviewed and approved the invoices and submitted them to Subaru for payment.

47. Subaru was the foreseeable recipient of the false invoices because Allied Materials was providing services to Subaru as a subcontractor for CBRE, Subaru's facilities manager.

**ANSWER:** CBRE lacks knowledge of the "false invoices" referenced in Paragraph 47 and therefore CBRE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of that paragraph. CBRE further denies that Allied Materials was a subcontractor for CBRE.

48. Subaru paid the false invoices.

**ANSWER:** CBRE lacks knowledge as to any allegedly false invoices Subaru paid and therefore CBRE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 48.

49. As a result of the foregoing conduct, Plaintiffs have been damaged in an amount not less than $9,700,000.

**ANSWER:** CBRE denies the allegations of Paragraph 49.

**COUNT V**
**(Contribution/Indemnification)**

50. Plaintiffs incorporate by reference the foregoing allegations.

**ANSWER:** CBRE realleges and incorporates by reference its answers to the foregoing allegations as if fully set out here.

51. Great American sustained damages in paying Subaru's claim.

**ANSWER:** CBRE has no knowledge of the purported payment by Great American referenced in Paragraph 51 and therefore CBRE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of that paragraph.

52. The damages sustained by Great American in paying Subaru's claim resulted from the breach of the Agreement and fraud by CBRE, and the responsibility is, therefore, upon CBRE.

**ANSWER:** CBRE denies the allegations of Paragraph 52.

53. CBRE was the primary, direct, and contributory cause of any and all damages or losses sustained by Great American.

**ANSWER:** CBRE denies the allegations of Paragraph 53. Answering further, CBRE states that the primary, direct, and contributory cause of any claimed damages was: (1) Mitchell Bleicher; and/or (2) Allied Materials; and/or (3) Subaru and its employee(s).

54. As a result of the above, Great American is entitled to be indemnified by CBRE.

**ANSWER:** CBRE denies the allegations of Paragraph 54.

**COUNT VI**
**(Subrogation)**

55. Plaintiffs incorporate by reference the foregoing allegations.

**ANSWER:** CBRE realleges and incorporates by reference its answers to the foregoing allegations as if fully set out here.

56. Great American has a right of subrogation because it paid $4,750,000 to Subaru for Subaru's claim.

**ANSWER:** CBRE denies the allegations of Paragraph 56.

57. Great American is entitled to recover against CBRE in the amount of $4,750,000.

**ANSWER:** CBRE denies the allegations of Paragraph 57.

**WHEREFORE**, Plaintiffs respectfully request judgment against CBRE for damages in an amount that is no less than $9,700,000, punitive damages, attorney's fees and costs, and for such other and further relief as the Court deems just and proper.

**ANSWER:** CBRE denies that Plaintiffs are entitled to any relief. Answering further, CBRE refers Plaintiffs to the limitation of liability provisions contained in the Facility Management Agreement.

**AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

For its affirmative defenses and counterclaims against Plaintiffs, and without assuming the burden of proof where it otherwise rests with Plaintiffs, CBRE states as follows:

**Factual Background**

1. Mitchell Bleicher, the owner of a company called Allied Materials, pleaded guilty to criminal charges that included the submission of allegedly false or inflated invoices to Subaru. Bleicher testified in his federal criminal proceeding that he was assisted in this alleged scheme by at least one Subaru employee, who Bleicher called "Individual 3 at Company 1." Bleicher testified that he paid cash to Individual 3 in return for submitting false Allied Materials invoices to Subaru for approval without revealing the falsity of the invoices.

2. Bleicher testified he would deliver the false invoices directly to Individual 3 at Subaru's headquarters in Cherry Hill, New Jersey in an envelope with a cash bribe for Individual 3. Bleicher testified that, later, he would meet with Individual 3 in the parking lot of a nearby hotel, instead of Subaru's headquarters, and Bleicher would sometimes conceal a cash payment for Individual 3 in a paper or Styrofoam coffee cup.

3. CBRE understands that Individual 3 at Company 1 was Denise Hyland, who was a facilities manager and prior to that a facilities administrator at Subaru headquarters in Cherry Hill,

New Jersey. Hyland fits the characteristics and role of the person Bleicher described in his testimony.

4. Subaru investigated Bleicher's alleged fraud and determined that Hyland was aware of the alleged misconduct by Bleicher. Subaru terminated Hyland in April 2018.

5. On a weekly basis, Hyland personally received the Allied Materials invoices from Bleicher. Hyland shepherded the invoices through the approval process, including final approval and payment by Subaru.

6. Hyland instructed CBRE employees to expedite the processing of Allied invoices within 24 hours of receipt to ensure weekly payment to Allied Materials. Hyland intended that CBRE process the invoices rapidly so as to avoid scrutiny of the invoices.

7. Hyland instructed CBRE that Allied Materials had a special or preferred status as a vendor for Subaru.

8. Hyland personally approved Allied Materials invoices for payment by Subaru.

9. Other Subaru personnel observed, or were in a position to observe, Subaru's special treatment of Allied Materials and its invoices, including Subaru's expedited payment of the invoices.

10. Other Subaru personnel knew or should have known about alleged inaccuracies in Allied Materials' invoices, including Hyland's supervisor, Steve Gale, who was Subaru's Director of Corporate Real Estate and Services. Gale regularly met with Hyland and the CBRE facilities manager and was directly involved in the vendor budgeting process. Gale had access to the invoices and reporting showing the amount spent with Allied Materials. Gale was an accountant by training and worked closely with Hyland.

11. Despite its knowledge, Subaru did not tell CBRE about any alleged inaccuracies in Allied Material's invoices.

**First Affirmative Defense – Statute of Limitations**

12. CBRE realleges and incorporates by reference the foregoing allegations of its Affirmative Defenses and Counterclaims as if fully set out here.

13. Plaintiffs' claims are barred in whole or part by the applicable statute of limitations.

**Second Affirmative Defense – *In Pari Delicto***

14. CBRE realleges and incorporates by reference the foregoing allegations of its Affirmative Defenses and Counterclaims as if fully set out here.

15. Subaru, through the knowledge and conduct of its employees, was at least equally responsible for its alleged injuries as CBRE.

16. Plaintiffs' claims are therefore barred in whole or part by the doctrine of *in pari delicto.*

**Third Affirmative Defense – Equitable Estoppel**

17. CBRE realleges and incorporates by reference the foregoing allegations of its Affirmative Defenses and Counterclaims as if fully set out here.

18. Plaintiffs' claims are barred in whole or part by Subaru's own knowledge, conduct, actions, and inactions, which constitute equitable estoppel of all claims and relief sought.

**Fourth Affirmative Defense – Waiver**

19. CBRE realleges and incorporates by reference the foregoing allegations of its Affirmative Defenses and Counterclaims as if fully set out here.

20. Plaintiffs' claims are barred in whole or part by Subaru's own knowledge, conduct, actions, and inactions, which constitute waiver of all claims and relief sought.

**Fifth Affirmative Defense – Contributory or Comparative Negligence Or Fault**

21. CBRE realleges and incorporates by reference the foregoing allegations of its Affirmative Defenses and Counterclaims as if fully set out here.

22. Plaintiffs' claims are barred in whole or part by Subaru's own negligence or fault.

**Sixth Affirmative Defense – Economic Loss Doctrine**

23. CBRE realleges and incorporates by reference the foregoing allegations of its Affirmative Defenses and Counterclaims as if fully set out here.

24. Plaintiffs' claims are barred in whole or part by the economic loss doctrine.

25. CBRE reserves the right to assert additional affirmative defenses that it learns during the course of this action.

**COUNTERCLAIMS**

CBRE states the following for its counterclaims against Plaintiff Subaru of America, Inc.

**Counterclaim Count I – Fraud**
(Subaru)

26. CBRE realleges and incorporates by reference the foregoing Paragraphs 1-11 of its Affirmative Defenses and Counterclaims as if fully set out here.

27. Subaru, through its agents, was aware of any fraudulent aspects of the Allied Materials invoices.

28. Subaru, through its agents, instructed CBRE that the Allied Materials invoices be processed on an expedited basis, despite Subaru's knowledge of any fraudulent aspects of those invoices.

29. Subaru, through its agents, intended that CBRE process the Allied Materials invoices without discovering any fraudulent aspect of those invoices.

30. CBRE relied upon Subaru to provide it with accurate information and not conceal information related to the Allied Materials invoices. Subaru did not tell CBRE that it knew or suspected that Allied Materials invoices were fraudulent.

31. CBRE has been injured as a result of Subaru's conduct. CBRE's reputation has been injured as a result of Subaru's failure to disclose accurate information about Allied Materials. Further, if CBRE is found liable to Plaintiffs in relation to Allied Materials invoices, any such liability would represent an injury to CBRE due to Subaru's failure to disclose accurate information to CBRE.

**Counterclaim Count II – Negligent Misrepresentation**
(Subaru)

32. CBRE realleges and incorporates by reference the foregoing Paragraphs 1-11 of its Affirmative Defenses and Counterclaims as if fully set out here.

33. Subaru, through its agents, knew or should have known of any fraudulent aspects of the Allied Materials invoices.

34. Subaru, through its agents, instructed CBRE that the Allied Materials invoices should be processed on an expedited basis, despite the fact that Subaru knew or should have known of any fraudulent aspects of those invoices.

35. CBRE relied upon Subaru to provide it with accurate information and not conceal information related to the Allied Materials invoices. Subaru did not tell CBRE that it knew or suspected that Allied Materials invoices were fraudulent.

36. CBRE has been injured as a result of Subaru's conduct. CBRE's reputation has been injured as a result of Subaru's failure to disclose accurate information about Allied Materials. Further, if CBRE is found liable to Plaintiffs in relation to Allied Materials invoices, any such

liability would represent an injury to CBRE due to Subaru's failure to disclose accurate information to CBRE.

WHEREFORE, CBRE requests that this Court enter judgment on its behalf and against Plaintiffs, award CBRE all damages, and order such other relief as the Court may deem equitable, just, and proper.

CBRE, INC.

Dated: 10/16/20 By: /s/ Andrew J. Lichtman
One of Its Attorneys

Andrew A. Weissmann (admitted *pro hac vice*)
Andrew J. Lichtman
JENNER & BLOCK LLP
919 Third Avenue
New York, New York 10022
(212) 891-1600 phone
(212) 891-1699 fax
aweissmann@jenner.com
alichtman@jenner.com

Daniel J. Weiss (admitted *pro hac vice*)
Keri L. Holleb Hotaling (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350 phone
(312) 527-0484 fax
dweiss@jenner.com
khotaling@jenner.com

**Certificate of Service**

I, Andrew J. Lichtman, hereby state that I caused the foregoing document to be filed on the Court's ECF system on October 16, 2020, which caused a copy to be served upon all counsel that have appeared in this matter.

Dated: 10/16/20 By: /s/ Andrew J. Lichtman